WILLIAM U. ARNOLD *et al. vs.* VOLNEY W. MASON.

An award which is made under a material mistake of fact should be set aside.

BILL IN EQUITY to set aside an award.

*August* 4, 1875.    MATTESON, J.    This is a bill in equity to set aside the award of referees appointed to determine the rent to be paid for certain property held by the respondent under lease from the complainants.

On the 12th of November, 1866, the complainants leased to the Providence Steam Marble Company five certain lots of land situate in the westerly part of Providence, being a part of the Mehitable Arnold lands, " *with the two-story building on lot No. 174,*" being one of the five lots "*fronting on High Street, twenty feet by thirty-five feet deep,*" for the term of twenty years from the 1st of November, 1866.    In the lease it was stipulated that the rent for every period of five years after the first should be such sum as should be agreed upon by the parties or awarded by three disinterested persons, but in no case less than five hundred dollars, per annum, with all taxes and assessments.

The Providence Steam Marble Company, by their conveyance dated November 1, 1866, assigned the leasehold premises to the respondent.

After the expiration of the first five years of the term, the complainants and respondent appointed Henry T. Grant, Alfred Anthony, and Eli Aylesworth, referees, to determine the amount of rent to be paid by the respondent for the second period of five years.

The bill alleges that the referees in making their award did not consider the value of the building mentioned in the lease, but adjusted the amount of rent from the value placed by them upon the land alone, supposing that nothing ought to be paid or was due from the respondent to the complainants on account of the building. The bill further alleges that the pretended award and adjustment of rent was made by the referees under a clear mistake of fact, and prays that it may be set aside and annulled and a new award ordered.

The building in question was erected about April or May, 1856, by one George A. Mumford, then tenant of the premises under a lease to him from Mehitable Arnold dated January 15, 1856, for the term of fifteen years. It was built in place of an old dwelling-house which had previously stood upon the same lot, and which not being adapted to the requirements of his business, Mumford had caused to be removed with the consent of the lessor. A year or two afterwards, during the continuance of his lease, Mumford became insolvent and assigned the premises to one John P. Mumford, who on the 9th of December, 1858, conveyed the interest of his assignor in the premises, and the buildings, fixtures, and improvements erected upon the same to John B. Anthony. John B. Anthony, on the 24th of June, 1863, conveyed the same to the Providence Steam Marble Company. Mehitable Arnold, the lessor, died in 1864, and devised one half of all her real and personal estate, including the reversion of the premises conveyed in the Mumford lease, to the complainant, George C. Arnold, and the rents, issues, and profits of the other half to the complainant Phebe Ann Arnold during the life of the complainant, William U. Arnold, and after her death to the support of the family living with the said William U. Arnold during his natural life, and after his death to his children and other descendants. A little more than four years befor ethe expiration of the Mumford lease, the Providence Steam Marble Company took a new lease of the premises from the complainants, as recited above.

The first question which arises is, were the complainants entitled to rent for the building in controversy at the time of the fixing of the rent for the premises by the referees ? The complainants assert that George A. Mumford transferred this build-

ing to Mehitable Arnold in exchange for the building which he had removed, and contend that they as her devisees are and were entitled at the date of the award to rent therefor. The respondent on the other hand alleges that this building was erected by Mumford for the purposes of his business of marble cutting as a trade fixture, and denies that it was ever transferred to Mehitable Arnold in exchange for the building removed by him. The respondent also alleges that it was understood and agreed, at the time of the execution of the lease of November 12, 1866, between the parties thereto, that the practical effect thereof should be an extension of the original lease, and that all rights and privileges secured to the lessee and his assigns under the original lease, and all rights enuring to them in relation to the premises and buildings prior to and at the execution of the lease of November 12, 1866, should continue the same under the last mentioned lease, and he therefore contends that the complainants have no right to claim rent for this building, because their interest in the same is only a reversionary interest to be enjoyed at the expiration of his lease.

We find nothing in the evidence to sustain these allegations of the respondent.

On the contrary, the lease itself particularly describes and conveys this building. It is true the answer states that the clause in relation to the building was inserted in the lease by mistake, that there was no building of that description on the premises at the date of the lease, and that the clause referred to applies to the old building which had been removed; and the respondent himself states the dimensions of the present building to be by actual measurement, length, 102 feet; width, 18 feet; part one story and part two stories high. But George A. Mumford, who erected the building and sees it frequently, states that he thinks it about 35 feet long, and from 18 to 20 feet wide, and two stories high; and he also testifies that he had, previously to the erection of the present building, built a shop in the rear, 67 feet long, covering the width of the lot, and one story high, and that he joined this shop to the new building on High Street when the latter had been erected; that the building 67 feet long had another story added to it by the Providence Steam Marble Company. Mr. Mason, the respondent, himself also, in a pre-

vious portion of his testimony, speaks of "two connected build-
ings fronting on High Street," "closely joining and communi-
cating with each other," so that they might with equal propriety
be called one building, and also of the size of the rear building
connected with the building on High Street as about 65 feet by
20 feet, two stories high. It is evident, therefore, that when
Mr. Mason speaks of this building as 102 feet long, he is speak-
ing not only of the building mentioned in the lease, but also of
the building joined to it in the rear.

The only witnesses testifying in relation to the agreement
between George A. Mumford and Mrs. Mehitable Arnold, under
which the dwelling-house was removed and the building in con-
troversy erected, are Mr. Mumford himself and the complainant,
George C. Arnold. Mr. Mumford states that he understood the
new building was to be his property as long as he held the lease,
or as the premises were leased by him, but "*reverted*" to Mrs.
Arnold at the expiration of that time. George C. Arnold testi-
fies that Mr. Mumford was to put up the building for his mother,
Mrs. Arnold, that it was to be *hers* when completed, and was to
take the place of the old one.

Assuming the agreement to have been as understood by Mr.
Mumford, which is more favorable to the respondent than as
stated by Mr. Arnold, and putting upon it the more favorable
construction for the respondent, the building became the property
of the lessors at the expiration of the original lease. The com-
plainants contend that that lease was surrendered by the taking
of the new lease. The respondent admits that the taking of a
new lease during the term of a prior lease is presumptively a
surrender of the prior lease, but claims that such presumption
in this case is rebutted by the circumstances. He argues that
the Providence Steam Marble Company, having the ownership of
the building secured to them for the residue of the term of the
original lease, would not have voluntarily parted with a vested
right of that nature without adequate compensation, and that no
such compensation is disclosed by the evidence, and that it was
for the mutual advantage of lessors and lessees that the second
lease should be substituted for the first with all the rights secured
to the lessees under the second which existed under the first.

We cannot assent to this argument. The granting of the new lease for a period of fifteen years beyond the term of the original lease, for aught that appears, may have been a sufficient consideration to the lessees for surrendering their right in the building in question for the remaining four years of the original term ; and though that extension of the term may have been for the advantage of the lessors, the lessees doubtless supposed it would be as much or more to their own advantage.

Our conclusion is, that the building in question became the property of the lessors on the 12th of November, 1866, and, for aught that appears, has ever since belonged to them. The referees, therefore, should have estimated the value of this building, as well as of the land, in fixing the rent for the second period of five years. Did they do so? Mr. Henry T. Grant, one of the referees, testifies positively that they did not, because they supposed that the description in the lease of a building 20 feet by 35 feet referred to the old building, and that it had been torn down soon after the commencement of the lease, and that, by allowing it to be torn down without any agreement that it should be replaced, the lessors had lost the right to claim rent for it ; that Mr. Arnold claimed rent for the front building, and Mr. Mason disputed that claim ; and that, as the lease did not call for any building 20 feet by 100 feet, the referees supposed that the present building had been built by the Marble Company. The testimony of Mr. Alfred Anthony, another of the referees, so far as it goes, confirms the testimony of Mr. Grant, that no allowance for rent of any building belonging to the lessors was made. No other evidence in relation to this question was submitted.

The testimony of the respondent shows that the rental value of this building is sufficiently large to have materially increased the award had it been taken into account. It is well settled that an award made under a material mistake of fact should be set aside. The authorities cited by the complainants fully establish that rule.

The respondent alleges that the question of the ownership of the building was fully gone into before the referees, each party strenuously asserting his claims, and that it was entirely competent

for the referees to find that it was not the intention of the parties at the execution of the second lease that valuable rights vested in the Providence Steam Marble Company should have been gratuitously surrendered by them ; and that, if they so found the *fact*, it was not a *mistake of law* for them to find that the respondent, during his occupancy under his present lease, is the owner of the building in controversy. We do not think the evidence shows that the question of the ownership of the building was submitted to the referees, or that they pretended to pass upon it. There was undoubtedly an animated dispute between the complainant, George C. Arnold, and the respondent in relation to the matter ; but the referees erroneously supposed that the building referred to in the lease had been torn down after the making of the lease, and took it for granted that all the buildings on the premises belonged to the lessees.

The respondent also alleges that the complainants have acquiesced in the award of the referees. That, after the finding of the referees had been communicated to both parties, no word of complaint was heard from the complainants as to the injustice or inadequacy of the award ; but that, on the contrary, the said George C. Arnold, within a short time thereafterwards, as the agent of the lessors, presented a bill for rent to the respondent, charging the same according to the award, viz. : at $750 per annum. The evidence shows that Mr. Arnold at first supposed that the award had been made upon the supposition that the building belonged to the complainants, and it does not appear that they or either of them knew to the contrary till he was so informed by the respondent upon the presentation of the bill for rent referred to. That bill was destroyed without being paid, and the subsequent bills presented have contained a "*protest*" or declaration to the effect that they do not include any charge for rent of the building standing on lot 174 owned by the lessors, no rent therefor being included in the sum fixed by the arbitrators under the lease in consequence of their having fallen into the error above narrated. Mr. Arnold and Mr. Mason differ in their testimony in relation to their interview when the first bill for rent, after the award was made, was presented ; but assuming what occurred to have been as testified by Mr. Mason and Mr. Richmond, we do not think it shows such an acquiescence

in the award as would, estop the complainants from maintaining their suit to set it aside.

> *The award will be set aside and a new one ordered.*

*Browne & Van Slyck* and *John F. Tobey,* for complainants.

*Thurston, Ripley & Co.* for respondents.